## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## LUFKIN DIVISION

| | | |
|---|---|---|
| LISA PONDER, | § | |
| | § | |
|    Plaintiff | § | **CIVIL ACTION NO. 9:20-62** |
| | § | |
| Vs. | § | |
| | § | |
| | § | |
| BIG TEX TRAILER WORLD, INC. d/b/a | § | |
| Big Tex Trailers | § | |
| | § | |
|    Defendant | § | **(JURY TRIAL DEMANDED)** |

## PLAINTIFF'S ORIGINAL COMPLAINT

**TO THE HONORABLE UNITED STATES DISTRICT COURT:**

COMES NOW Lisa Ponder ("Plaintiff" or "Ms. Ponder") filing this her Original Complaint against Big Tex Trailer World, Inc. d/b/a Big Tex Trailers ("Defendant" or "Big Tex"), and in support of her causes of action would respectfully show the Court as follows:

### I. JURISDICTION, PARTIES AND VENUE

1. This Court has jurisdiction over the causes of action alleged by Plaintiff in this Original Complaint pursuant to the Equal Pay Act, 29 U.S.C. § 206(d) *et seq*.

2. Lisa Ponder ("Plaintiff" or "Ms. Ponder"), whose gender is female, is protected by the Equal Pay Act, and at all relevant times was an employee within the meaning of the Act.

3. Defendant Big Tex operates in Texas and was at all times, relevant to the facts and claims in this Complaint, Ms. Ponder's employer within the meaning of the Equal Pay Act.

4. Plaintiff will serve Defendant Big Tex with her Original Complaint by and through its attorney of record or its agent for service at CT Corporation System, 1999 Bryan Street, Ste. 900, Dallas, Texas 75201-3136.

5. Defendant Big Tex—who is a multi-state retailer of trailers—engaged in an industry affecting commerce and employed more than fifteen (15) regular employees at all times relevant to Plaintiff's claims set forth herein.

6. The employment practices alleged to be unlawful in this Complaint were committed within the Eastern District of Texas, Lufkin Division. Venue is, therefore, appropriate in this Court.

**<u>Vicarious Liability – Respondeat Superior</u>**

7. Whenever in this Complaint it is alleged that the Defendant did any act or thing, it is meant that the Defendant's supervisors, agents, servants, employees or representatives did such act and/or that at that time such act was done, it was done with the full authorization or ratification of the Defendant or was done in the normal and routine course and scope of employment of Defendant's supervisors, managers, agents, servants, employees, or representatives.

## II. FACTUAL BACKGROUND

8. According to its website, Defendant started its business in 1982 as a small-town-trailer shop and is now a multi-million-dollar enterprise that has established itself as America's #1 professional grade trailer manufacturer.

9. Defendant first hired Ms. Ponder in 2012 to work in its Livingston store in an hourly position as office manager. Her beginning pay was $10.00/hr. As office manager, Ms. Ponder performed administrative and clerical tasks such as filing, answering phones, completing title paperwork and securing title transfers for Defendant's trailers.

10. When Ms. Ponder was hired, Dennis Collins was the store manager, there were two sales employees (Nick and Rebecca), two-yard tech/shop employees and Ms. Ponder. Defendant's Livingston store was fully staffed while Dennis Collins worked as the store manager.

11. Approximately one month after Ms. Ponder's hire, however, Collins left his job as store manager. Although Defendant asked Ms. Ponder to consider the store manager job at that time, Ms. Ponder declined because she wanted to gain more experience before accepting the job as store manager. As such, Defendant instead hired Julie Gunn.

12. By the time Julie Gunn was hired, both sales employees (Nick and Rebecca) had either quit or been fired and only one shop employee remained. Thereafter, Defendant forced Ms. Ponder to perform her role as office manager and sales. Defendant also often required Ms. Ponder to cut the property grass.

13. In 2014, approximately one year after Gunn was hired, Defendant fired her and promoted Ms. Ponder into the store manager position for its Livingston store. Defendant also increased Ms. Ponder's pay to $35K/year. Upon information and belief, at that time, Ms. Ponder was the lowest paid store manager within Texas and within Defendant's South Central Region.

14. Although Defendant promoted Ms. Ponder into the store manager position, Defendant refused to replace Ms. Ponder's former office manager position so Ms. Ponder performed store manager duties as well as admin duties for Defendant during her tenure as store manager in 2014. She also was forced to mow the 3 acres of grass on the property.

15. In April 2015, almost a year after Defendant had promoted Ms. Ponder to store manager, Defendant stripped Ms. Ponder of her store manager title to appease another employee, Deborah Norvel, who had been hired to work in the Livingston store *after* Ms. Ponder's promotion simply because Ms. Norvel wanted the store manager title.

16. Succumbing to Ms. Norvel's demands, Defendant also reduced Ms. Ponder's pay back to an hourly rate where she earned $14/hour to perform sales work. During this time, Ms. Ponder also helped Ms. Norvel with the admin work generated by the store as Defendant had not rehired an admin for Ms. Norvel either. Upon information and belief, Defendant only supplied its male store managers with admin employees (called office managers).

17. Approximately one year later, Ms. Norvel quit her employment with Defendant and Defendant again promoted Ms. Ponder into the store manager position for its Livingston store. This time, Defendant determined to pay Ms. Ponder $37,500/year. Upon information and belief, Ms. Ponder was the lowest paid store manager within Texas and within Defendant's South Central Region at that time. The only manager who was paid as low as Ms. Ponder within the South Region of Texas was M. Brandon, another female.

18. At all times, Ms. Ponder performed store manager duties and admin duties while working as the store manager of Defendant's Livingston store. For months at a time, Ms. Ponder was also forced to perform sales duties because Defendant would not adequately replace the sales employee(s) who had quit or been fired since Collins and Norvel's departure.

19. Ms. Ponder also performed manual work while working as Defendant's store manager for the Livingston store. That is, Ms. Ponder would care for, mow and weed 3 acres of Defendant's property at least 2-4 times each month. The task was a 2-day job. It required that she move all 100-150 trailers that sat on Defendant's grassy property with a tractor to be able to mow the entire property. The work was so intense and laborious that Ms. Ponder's husband and son, who were not paid by Defendant, often helped her to perform this work.

20. After working as Defendant's Livingston store manager for over a year, in or about December 2017, Ms. Ponder's regional manager met with her for her yearly evaluation and gave

her Defendant's updated job description. In it, Defendant's stated pay rate for its store managers was $45K-$65K. At that time, however, Ms. Ponder was earning only $37,500/year.

21. At that time, Ms. Ponder learned that the only store managers that were <u>under</u> the stated $45K-$65K salary range within the South Region of Texas were female. In other words, all of Defendant's male managers in Texas already earned $45K-$65k in their store manager position with Defendant.

22. Despite Defendant's December 2017-updated job description and stated pay range for Ms. Ponder's store-manager position, Defendant failed to increase Ms. Ponder's salary until April 2019, almost two years later. Upon information and belief, at that time, the lowest paid store managers were female.

23. Despite Defendant's increase to Ms. Ponder's salary in April 2019, just one month later, in May 2019, Defendant reduced Ms. Ponder's commission which resulted in an overall reduction of pay for Ms. Ponder. At this time, Ms. Ponder's pay equated to $19.23/hour.

24. Earning $19.23/hour, Ms. Ponder and female store manager M. Brandon were the only managers within Texas and within Defendant's South Central region, who earned less than $20.00/hour. They were Defendant's lowest paid managers.

25. All of Defendant's male managers within Defendant's South Central region in Texas earned more than Defendant's only two female store managers.

26. What is more, as store manager in Defendant's Livingston store, Defendant required Ms. Ponder to work between 12-15 hours each day, 6-7 days each week performing the work of a store manager, admin, sales person, and laborer. Defendant's male managers, however, all enjoyed separate employees who worked as sales, admin or labor for Defendant. In other words,

Defendant's male managers did not have to perform the job of manager, sales, admin and laborer like Ms. Ponder.

27. Further, Defendant allowed its male store manager employees to hire help for the outside maintenance of its store and grass that Defendant required Ms. Ponder to perform.

28. Due to these arduous conditions, Ms. Ponder requested no less than once a month (during her employment as a store manager) that she be allowed to hire a dedicated sales employee or admin assistant for her store like the male managers enjoyed. She also asked that Defendant hire someone to care for the outside maintenance. Defendant refused but held Ms. Ponder to the same responsibilities, expectations and more than its male managers. Further, Ms. Ponder was paid less.

29. What is more, during the period of 2016-2019, Defendant hired various male individuals to work as store manager at other Texas locations (after Ms. Ponder had been working as a store manager for over a year) and who had less management experience than Ms. Ponder but earned more than Ms. Ponder.

30. Notably, during Ms. Ponder's time as store manager, she performed substantial hourly and manual labor work yet she never received overtime pay for her overtime hours.

31. Ms. Ponder complained about Defendant's pay practices directly to Defendant in mid-2019 but Defendant did not increase her pay or reduce her duties.

32. Feeling extremely demeaned, disrespected, and discriminated against based on her pay, the hours she was forced to work and the manual labor imposed on her while at the same time paying her less than men who performed less work than she did as store manager, Ms. Ponder informed Defendant that she wished to step down from her store-manager position in or about July 2019.

33. Prior to Ms. Ponder's transfer, Defendant hired a male manager to take Ms. Ponder's manager position (in which she was earning $19.23/hr.). Defendant's start pay for the male store manager who it had hired to replace Ms. Ponder was $24.52. What's more, Defendant immediately allowed its new male manager to hire someone to cut the property grass. Defendant did not require that he cut the grass like Defendant required of Ms. Ponder.

34. After addressing the disparity in pay and treatment with Defendant's management throughout 2019, not receiving pay comparable to her male comparators and witnessing the difference in treatment towards Defendant's male managers in comparison to her, Ms. Ponder felt forced to quit her job at Big Tex in October 19, 2019. That is, she was constructively discharged.

### III.   CAUSES OF ACTION

#### A. DISCRIMINATION PURSUANT TO THE EQUAL PAY ACT

35. Plaintiff repeats and re-alleges by reference each allegation contained in the paragraphs above and incorporates them here as though fully set forth.

36. Defendant violated Plaintiff's civil rights in violation of the Equal Pay Act by discriminating against Plaintiff with respect to her pay because of her gender (female).

37. This violation consisted of discrimination of a continuous nature and led to the loss and impairment in whole or part, of the wages, benefits, promotions, privileges, and terms and conditions of Plaintiff's employment with Defendant.

38. Such employment practices were not job-related and were not consistent with business necessity.

39. Such employment practices were not based on (1) a seniority system; (2) merit system; (3) system measuring earnings by quantity or quality of production; or (4) a differential based on any other factor other than sex.

40. The above-described acts by Defendant caused Plaintiff substantial injury and damage. As a direct and proximate result of Defendant's discrimination against her, Plaintiff has suffered and will continue to suffer pain and suffering, and extreme and severe mental anguish and emotional distress. Plaintiff is thereby entitled to general and liquidated damages in amounts that will be proven at trial.

41. The above-described acts on Defendant's part were reckless, intentional, committed with malice and undertaken in violation of the Equal Pay Act proximately causing Plaintiff substantial injuries and damages.

## IV.   DAMAGES

42. Defendant's conduct constitutes violations of statutory and/or common law. Such unlawful conduct seriously affected Plaintiff in her occupation. Because of Defendant's unlawful conduct, Plaintiff has suffered, suffers, and will continue to suffer financial loss, humiliation, mental anxiety and stress, and other damages. Plaintiff has suffered direct injury as a proximate result of the unlawful discriminatory practices, policies and procedures of Defendant. Accordingly, Plaintiff seeks all general, special, incidental, liquidated and consequential damages in an amount to be proved at trial.

43. Because of Defendant's unlawful and tortious conduct, it has been necessary for Plaintiff to retain the undersigned attorney to represent her in these causes of action, and Plaintiff has agreed to pay her attorney reasonable attorney's fees for the preparation and trial of these causes, and further for any appeal thereof should same become necessary.

44. Additionally, Plaintiff has incurred out-of-pocket expenses, which include litigation costs and other expenses to preserve her ability to earn a living. Accordingly, Plaintiff seeks all general, special, incidental and consequential damages as shall be proven at trial.

45. Further, Plaintiff seeks pre-judgment interest at a rate commensurate with the actual rate of interest in the marketplace or, alternatively, the statutory rate of interest because of the delay in receiving the damages and to avoid unjust enrichment to Defendant. Plaintiff also seeks post-judgment interest at the maximum rate allowed by law in the event that Defendant does not promptly tender damages assessed against it and to avoid unjustly enriching Defendant.

## V.    JURY DEMAND

46. Plaintiff requests that this action be heard before a jury.

## VI.    PRAYER

WHEREFORE, premises considered, Plaintiff prays that Defendant be cited to appear and answer herein, and that on final trial, Plaintiff have judgment against Defendant for:

a. Permanent injunction enjoining Defendant, its agents, successors, employees, and those acting in consort with Defendant from engaging in any employment practice which discriminates on the basis of gender and protected complaints.

b. All damages to which Plaintiff may be entitled pursuant to this Complaint, or any further amendment(s) thereto, including but not limited to back pay, reinstatement or front pay in lieu of reinstatement, loss of earnings in the past, loss of earning capacity in the future, loss of benefits in the past, loss of benefits in the future, statutory relief at law, and equity;

c. Compensatory damages for pain and mental suffering in the past and future;

d. Liquidated damages and/or punitive damages in an amount above the minimum jurisdictional limit of the Court;

e. Reasonable attorney's fees, with conditional awards in the event of appeal;

f. Pre-judgment interest at the highest rate permitted by law;

g. Post-judgment interest from the judgment until paid at the highest rate permitted by law;

h. Costs of court and expert witness fees incurred by Plaintiff in the preparation and prosecution of this action; and

i. Such other and further relief, at law or in equity, to which Plaintiff may be entitled,

whether by this Original Complaint or by any further amendment hereto.

Respectfully submitted,

The Murphy Law Practice, PLLC

/s/ *Marjorie A. Murphy*
Marjorie A. Murphy
State Bar No. 24013218
3355 W. Alabama, Ste. 670
Houston, Texas 77098
Telephone: (832) 564-3804
Facsimile: (832) 553-7441
Email: marjorie@themurphylawpractice.com
**ATTORNEY-IN-CHARGE FOR
PLAINTIFF LISA PONDER**

### CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of April 2020, this instrument was filed pursuant to the electronic filing guidelines set forth by the United States District Court for the Eastern District of Texas, Lufkin Division and that service will be further made in compliance with such guidelines.

/s/ *Marjorie A. Murphy*
Marjorie A. Murphy